[No. 7241]

BUSHNELL v. THE LARIMER & WELD IRRIGATION COMPANY.

1. PRIOR JUDGMENT—*Effect*—A former adjudication is conclusive in any subsequent action between the same parties, as to every matter which might have been raised and determined therein.

2. PLEADING—*Former Adjudication*, held sufficiently pleaded.

*Error to Larimer District Court.*—Hon. JAS. E. GARRIGUES, Judge.

Mr. FANCHER SARCHET, for plaintiff in error.

Messrs. RHODES & FARNWORTH, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This suit was brought by the Larimer and Weld Irrigation Company against E. H. Bushnell, plaintiff in error, and other defendants.

It was alleged in the complaint in substance, that the plaintiff is the owner of a line of ditch known as the Larimer and Weld Irrigation Company's canal, and from which it supplies water to irrigate many thousands of acres of land to various consumers, including the defendant, each of said defendants having contracts to which receive from the plaintiff water sufficient to irrigate their lands mentioned and described in the several contracts. That the plaintiff has a superintendent in charge of this canal, whose duties are to regulate and operate the canal, and make distribution of water to the parties entitled thereto. That in order that the superintendent of the plaintiff's canal may properly run and operate the same, and make proper distribution of the water therefrom, it is necessary that he should have charge and control of the headgates upon the canal used for the distribution of water. It is then charged that the defendants, claim and undertake to exercise the right or privilege of control and operation of the various headgates belonging to the plaintiffs, and to raise and lower such headgates and take water from the said canal without any supervision by the plaintiff's superintendent, and refuse to allow the plaintiff to have any voice or say as to any water so needed by said defendants, and as to when it is proper that said headgates should be open or closed, or as to what quantity of water said defendants are to receive from the canal through said headgates, and that defendants have

opened said headgates without authority from the said superintendent and have assumed to take from plaintiff's superintendent the right to conduct and operate said ditch or control the same, or the distribution of water therefrom, in so far as the headgates of the defendants are concerned.

The complainant prays for an injunction to prevent these acts and to compel the defendants to receive the water to which they are entitled by the direction and order of the superintendent of the plaintiff. To this complaint the plaintiff in error, defendant Bushnell, filed his separate answer in which he pleads that the matters and things involved in the complaint are as to him *res adjudicata*.

It is alleged in this answer that an adjudication of the matters complained of were had in the case of the said defendant *Bushnell v. The Larimer and Weld Irrigation Company*, plaintiff in this case, instituted in the district court of Larimer county on the 4th day of January, 1901. The pleadings and decree in that case are fully set out in Bushnell's answer in this case. From these it appears that there were certain original owners of appropriations and priorities of the irrigation ditch then known as "Irrigation Ditch Number 10," taking its supply of water from the Cache la Poudre river, and that Benjamin Eaton, the grantor of the Larimer and Weld Irrigation Company, entered into a contract with each of the said owners of priorities and consumers of water, among which was Franklin W. Garrett, from whom Bushnell deraigned his title. The contract between Eaton and Garrett was fully set out in the complaint in the case of *Bushnell v. Irrigation Company*, as follows:

Know all men by these presents that I, Franklin W. Garrett, of the county of Larimer, state of Colorado, for the consideration hereinafter expressed to be performed

by Benjamin H. Eaton, his heirs and assigns, do hereby sell, give, grant and release unto the said Benjamin H. Eaton, his heirs and assigns, all the right, title and interest which I have in and to any shares or privileges or any surplus credit for and on account of any work or labor performed on account of the same in the irrigation ditch known as Irrigation Ditch Company Number Ten (10), said ditch being located on the north side of the Cache la Poudre river in the county of Larimer, state of Colorado.

Witness my hand and seal this 24th day of April, A. D. 1878.

And I, the said Benjamin H. Eaton, do hereby agree as a consideration for said grant and sale above made that the said Franklin W. Garrett, his heirs and assigns, shall have the right and privilege, and the said right and privilege is hereby granted unto the said Franklin W. Garrett, his heirs and assigns, to take from said Irrigation Ditch Number Ten (10), at the place where the lower portion of said ditch as now constructed intersects with a new survey made by the said Benjamin H. Eaton, a sufficient quantity of water to irrigate one hundred and sixty (160) acres of land and no more.

The right to irrigate the said one hundred and sixty (160) acres of land from said ditch shall be perpetual and without expense to the said Franklin W. Garrett, in maintaining said ditch.

And it is further agreed by the said Benjamin H. Eaton that in case he should fail to keep the said ditch in repair so that there should not be sufficient supply of water in said ditch to irrigate said one hundred and sixty (160) acres, then the said Benjamin H. Eaton shall forfeit his right by virtue of such sale above made after due notice of such failure and neglect on his part, and

further neglect and failure after said notice on his part to perform his agreements as aforesaid.

It was further alleged in that complaint that after the execution of this contract the said Eaton acquired the right of way and the appropriation and priorities and right to the use of waters of said Irrigation Ditch No. 10, for the purpose of enlarging and extending the same. Also that on the 24th day of April, 1878, the said Garrett was the owner of the N½ of SE¼ of Sec. 8, Twp. 7, Range 68 W., and other lands adjacent thereto. The land thus described is the land now owned by Bushnell, and involved in this case. It was further alleged that pursuant to the terms of the said contract the said Garrett diverted from the said ditch the continuous use for irrigation and domestic purpose, sufficient water for 160 acres of said land, including the said described tract. That afterwards Eaton sold and conveyed to the defendant company, the said irrigation ditch, and the said appropriations of water so acquired by him; that Garrett conveyed the said tract of land involved in this suit, together with all rights to the use of water contained in the contract with Eaton, to Henry T. Miller, and that during the month of November, 1894, Miller conveyed the land with all of the said rights to water and use thereof as provided in said contract, to the then plaintiff Bushnell, defendant in this case, who has ever since been the holder and owner of the same.

It is then set forth in the complaint in that case that Garrett, Miller and plaintiff during all the times mentioned, and while each is and was the owner of the water rights in question, enjoyed an uninterrupted use of water under the contract with Eaton for irrigation and domestic purposes, and had the sole and exclusive control of the said headgates of that certain lateral ditch extending from ditch No. 10 and known as the Larimer

and Weld canal, to the land aforesaid, which said lateral ditch was and is used for the purpose of conducting the said water to the said premises; that Garrett, Miller and the plaintiff in succession continuously used the said water upon the said lands, for irrigation and domestic purposes, and enjoyed the sole and exclusive control of said headgates, and the free and uninterrupted use of said headgates until some time during the month of July, 1900, when the defendant in that case, the irrigation company, caused the said headgates to be locked, and denied to the plaintiff Bushnell, the use of water and refused, and still refuses to recognize Bushnell's right to the use of the water under the terms of the Eaton contract with Garrett.

Bushnell prayed in that case for an injunction against the defendant company, from in any manner interfering with him, his heirs and assigns in the use of the water under the terms of the Eaton contract.

To this complaint the defendant, The Larimer and Weld Irrigation Company, filed its answer admitting the facts set up generally in the complaint, but alleged that on the 31st day of December, 1881, Garrett assigned all his rights and interests under the Eaton contract to the said irrigation company, and received in consideration therefor the usual water contract of the Larimer and Weld Irrigation Company for what was known as two water rights, including one for the premises involved in this action, and therefore that Bushnell's rights were limited to such new contract.

Among other provisions in the said contract between Garrett and the irrigation company, are the following:

"In consideration whereof the said second party agrees to surrender and cancel, and hereby does surrender and cancel a certain agreement between Benjamin H.

Eaton and himself in regard to water for 160 acres of land, dated the 24th day of April, 1878.

"And in case the second party shall fail to perform and complete all and each of said agreements and stipulations aforesaid, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of the second party; or derived from him, shall utterly cease and determine, and all equitable and legal interests in the water rights hereby contracted to be conveyed shall revert to and rest in said first party without any declaration of forfeiture, or any other act of said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid, or service performed, as absolutely, fully and perfectly as if this contract had never been made."

The plaintiff Bushnell in his replication to the answer of the Larimer and Weld Irrigation Company in that case, admitted the execution of the assignment and agreement set up in the answer of the irrigation company, but contended that the irrigation company should not prevail for two reasons: (1) That at all times since the execution of the said assignment and agreement, the Larimer and Weld Irrigation Company had treated the said Garrett, and his successors in interest, as though the latter contract had not been executed, and has abandoned the same, and that the Eaton contract was in full force and effect upon both parties thereto and their successors in interest, for that during each and every year since the 2d day of November, 1881, Garrett and his successors in interest, Miller and the plaintiff, have taken water from the canal of the said company and regulated the headgates of the lateral through which water has been taken to irrigate the lands of the plaintiff at all

times, without any let or hindrance as to the amount of water required to irrigate said land, as at such time was deemed necessary by the plaintiff and his predecessors, to divert water from the canal of the defendant and apply it upon his said land, and that the defendant since said date, and its employes, at all times immediately preceding the commencement of the action, acted upon and treated the said contract set out in the irrigation company's answer as of no binding force and effect, and at all times since the execution of the contract between the irrigation company and Garrett has not attempted in any way to enforce any of the provisions of the latter contract, but have acted entirely upon the contract as between Garrett and Eaton, and that Garrett, acting upon the said conduct of the defendant irrigation company, its officers, agent and employes, and relying thereon sold, assigned and transferred said water right upon that express understanding and belief, to Henry T. Miller, and that the said Miller relying upon the conduct of the defendant, its officers, agent and employes, and from the statement then made to him by Eaton, then the president of the defendant company, to the effect that the contract between Eaton and Garrett was in force, and that he had the privilege of taking all the water from said ditch that he needed for the irrigation of the land in question wherever he needed it, sold assigned and transferred to the plaintiff said water right as being an approved perpetual right to the use of the water upon the land of the plaintiff, and the plaintiff Bushnell so relying on the acts and conduct of the company, purchased the said rights.

(2) That in an action in the district court of Larimer county in the year 1894, wherein the Colorado Milling and Elevator Company was plaintiff and the Larimer and Weld Irrigation Company was co-defendant with all the original contract holders of the No. 10 ditch, and their successors in interest, wherein it was sought to adjudi-

cate the right to the use of water in the Cache la Poudre river, as between the said defendant company and the said The Colorado Milling and Elevator Company, as well as all the original contract holders in No. 10 ditch with the said Eaton and their successors in interest, the said defendant the Larimer and Weld Irrigation Company in its own behalf, as well as on behalf of the said original contract holders of the No. 10 ditch and their successors in interest, answered and alleged, among other things; "That during the year 1878, the defendant B. H. Eaton, purchased said ditch or canal No. 10, together with all rights, title, interest and privileges therein, and the appropriations thereof, for the purpose of enlarging and extending the said ditch, and for the purpose of supplying defendants, including Henry T. Miller, with water for irrigation purposes and other beneficial uses, and upon the express consideration that the said persons above named as defendants and owners of land under and users of water from the said ditch or canal No. 10, for the privilege of conducting from said irrigation ditch a sufficient supply or quantity of water to irrigate their said lands; that all such rights were made perpetual and preferred, as against water rights thereafter granted and acquired in said canal; that the amount of water actually necessary to irrigate the said lands belonging to defendants, including Henry T. Miller and others for their beneficial uses, for which said water has been supplied, is much more than 19 2/3 cubic feet of water per second of time," which said allegations were proved and admitted by the plaintiff in said proceeding, and judgment of dismissal as to said Henry T. Miller, and the other holders of said No. 10 contracts was duly given and entered by said court on the 27th day of December, 1894, and which judgment is still in full force and effect, and the said plaintiff herein had actual notice of and participated in said controversy with the said Colorado Mill-

ing and Elevator Company, with full notice, knowledge, consent and ratification of the said defendant, the Larimer and Weld Irrigation Company.

That the plaintiff relying upon the said admissions and conduct of the Larimer and Weld Irrigation Company in that proceeding and which was then of record, and believing the same to be true, purchased the land and water right described in the complaint, and ever since has used the water from defendant's canal upon the belief and understanding that he had a preferred perpetual water right without restriction whatever in its use, as alleged and proved in said proceeding.

In the judgment rendered in the said cause of *Bushnell v. The Larimer and Weld Irrigation Company*, the court found in favor of the plaintiff Bushnell, and decreed that as between the plaintiff Bushnell and the defendant the irrigation company, its successors and assigns, that Bushnell's title to the use of water from the canal of the defendant irrigation company, was held and adjudged to be the right conveyed and expressly described in and by the terms of the Eaton contract; and that the plaintiff Bushnell, his heirs and assigns shall forever hold and enjoy the same as though the said contract had been executed between the said defendant company and the said plaintiff Bushnell.  The court further expressly decreed as follows:

"And it is further ordered, adjudged and decreed that the said plaintiff (Bushnell), his heirs and assigns, shall have the use and enjoyment of the headgate and the water from said canal as he has heretofore enjoyed the same with other No. 10 contract holders, in and from said defendant's canal sufficient to irrigate the north half of the southeast quarter of section eight (8), township seven (7) north, range 68 west, and for domestic purposes, and that the said defendant company, its

agents, attorneys and employes are forever restrained and enjoined from in any manner interfering with the water right of plaintiff as herein adjudicated and determined, and from interfering with him as to the amount and manner of diversion of water, agreeably to the terms of said contract, except that the said plaintiff, his heirs and assigns shall be restrained in the amount of water used to the necessities for irrigation of the said land and for domestic purposes.''

It is further alleged in the answer of Bushnell in the present case, that the said decree has never been disturbed, appealed from or reversed, and has at all times been in full force and effect, and that the matters and things litigated in the said action and adjudicated in said decree are the same matters and things which the said plaintiff seeks to have litigated and adjudicated in this action.

The defendant in error, plaintiff below in this case, demurred to the answer of the defendant Bushnell, which demurrer was sustained by the court. Plaintiff in error, Bushnell, electing to stand on his answer, the court rendered judgment against him in conformity with the prayer of the complaint, and which judgment is now before us for review.

From this synopsis of the pleadings in this case, and the pleadings and judgment in the case of *Bushnell v. Larimer and Weld Irrigation Company,* it will be observed that both actions were in the same court; that the latter action terminated in a judgment and decree in favor of Bushnell and against the irrigation company; that at the commencement of this action the said decree was in full force and effect; that the parties in the former suit were identical with the parties in this suit, and that the matters and things there litigated are identic-

ally the same as are sought to be litigated in this proceeding.

The answer of the plaintiff in error, if true, constituted a sufficient defense to the complaint of the defendant in error, for it unmistakably sets forth a former adjudication between the parties thereto, of precisely the same matters involved in this proceeding.

It is settled in this jurisdiction that a former adjudication is conclusive in a subsequent proceeding, between the same parties as to every matter properly involved, and which might have been raised and determined in it.—*Johnson v. Johnson,* 20 Colo. 143, 36 Pac. 898; *People ex rel Reynolds v. Board of County Commissioners of Rio Grande County,* 11 Colo. App. 124 & 136, 52 Pac. 748; *Breeze v. Haley,* 11 Colo. 351, 18 Pac. 551; *City of Denver v. Lobenstein et al.,* 3 Colo. 216; *Clark v. Knox et al.,* 32 Colo. 342, 76 Pac. 372; *Montezuma Cattle Co. v. Dale,* 16 Colo. App. 139, 63 Pac. 1058.

The answer of the plaintiff in error sets forth facts sufficient to sustain a plea of former adjudication of the matters complained of.

*The judgment is reversed.*

MUSSER, C. J., and GABBERT, J., concurring